I'm Bruce Grace. I'm here on behalf of CERTAIN UNDERWRITERS at Lloyds London. This is an appeal from two orders of the District Court. The first order denied underwriters petition to compel arbitration in accordance with the contracts. The second order granted Didn't the first order deny an order for consolidated arbitration? It did not, Your Honor. It simply denied underwriters petition to compel arbitration in accordance with the contract. It was the second order, which was in response to Cravens Dargan's cross-petition, that directed the parties to go forward in a consolidated proceeding. That is, directed the underwriters to name one arbitrator and to participate in the selection of one umpire. Let me rephrase my question. Didn't the first petition seek an order to compel arbitration on a contract-by-contract basis? Yes, it did, Your Honor. So that would be, in effect, non-consolidated. That would be non-consolidated, yes. So that asked, in effect, asked the Court to rule on the gateway issue of whether there should be consolidation or not in the first order. The first, the petition that underwriters filed asked for an order consistent with or under the terms of Section 206 of the Convention or the Act that implements the Convention on Foreign Arbitrable Rewards for an arbitration that would proceed in accordance with the contract. Now, after the district had the district court granted that petition, then it would have been open for the parties to present the issue of consolidation to each of the four panels. But the district court didn't deny it on any legal basis, as I read it. The district court denied in the first order. There's no showing that Cravens had defaulted on his contractual duty to arbitrate. Yes, that's correct. That's what I'm saying. Robertson, what's wrong with that finding? Because the petition that underwriters filed was asking for an order that the arbitration go forward in accordance with the contracts. And they have the right to do that under Section 206 of the Convention on Foreign Arbitrable Rewards. So at that point, it wasn't enough for the district court simply to say, you underwriters go forward in accordance with the arbitration demand, which was an effect of the order. The order basically said that Cravens-Dargan had not failed to arbitrate, which meant that the Cravens-Dargan demand was consistent with the contracts. But it's our view that it wasn't consistent with the contracts, since the contracts provide for contract-specific arbitration and not for a consolidated proceeding. But it gets back to the question of who decides that, because what Judge Letts did, first of all, he denies your motion. And he says, Cravens has not defaulted in his contractual duty to arbitrate. Respondent has initiated arbitration proceedings, and the Court declines to set the terms of the arbitration. Right. There's nothing wrong with any of that language, is there? He's not making a finding one way or the other on the contractual duties. He's just saying it's already an arbitration. I'm not going to interfere with the arbitration. Well, under Section 206 allows the district court to order that the arbitration proceed pursuant to the contract. Let me give you an example. But isn't that exactly what he did? In our view, no, because the arbitration that Cravens-Dargan had noticed was noticed not under any particular contract, but under this so-called reinsurance program. Maybe if I switch the facts slightly and give a hypothetical, let's say that the arbitration clause provided that the parties would appoint an arbitrator who was either a present or former official of an insurance company. And Cravens-Dargan sent a demand to the underwriter saying, we demand that you arbitrate and we name Bill Sullivan as our arbitrator. And it turns out that Bill Sullivan is an attorney who has never worked for an insurance or reinsurance company. At that point, the underwriters could go into court and ask for an order under Section 206 that the contract proceed, that the arbitration proceed in accordance with the terms of the contract. Now, you might say, well, but isn't that a procedural question? Isn't that a gateway question? Hasn't the Supreme Court in the line of cases of Halcyon and Greentree said that that question is for the arbitrator and not for the court? My answer to that is, each of those cases assumed as their predicate that there was already a tribunal that was empaneled pursuant to the contract. In each of those cases, at the beginning, you have an arbitration panel in place. And the question is, is that panel going to decide this particular issue or that particular issue? In first options, the Supreme Court said that questions of arbitrability won't be decided by the panel. They'll be decided by the court. In Halcyon, they said questions concerning the meaning of a NASDAQ rule on term limits would be decided by the arbitrator. In Greentree, questions of class certification would be decided by the arbitrator. But as a preliminary matter, in each case, there was already a panel in place consistent with the arbitration clause. Here, we don't have that. We have a demand. Roberts. What indication do you have from any of those cases that that is a pivotal point, that there be an arbitration panel? I mean, either it's a gateway issue or it's not. I don't see in any of those cases that the fact of a preexisting panel makes a great deal of difference. Well, in the Greentree case, before the Court reached the discussion of whether the issue of class certification was for the panel or for the Court, the Court made the following statement. And this is on page, let's see, I'm reading from U.S. Court, page 450. Okay. Roman numeral II of the opinion, the third paragraph. The Court says, the second sentence of the third paragraph, the class arbitrator was selected by Greentree with consent of Greentree's customers, the named plaintiffs. And insofar as the other class members agreed to proceed in class arbitration, they consented as well. And I believe that what the Court is doing there is it's making the preliminary point that there is an arbitration panel in place pursuant to the contract, because it's quoting from the contractual language in that section. It then goes on to decide the issue. Who should decide the question of class certification, the arbitration panel that is in place. Kennedy. So I understand your point. What you're saying is your petition that was dealt with in the first order was simply a petition to compel arbitration, period. In accordance with the contracts, yes. Just that you just wanted to get arbitration under the contracts. Right. Without any attempt to foreclose the question of consolidation. That's correct. And that point becomes explicit when we respond to the cross-petition that Kravens-Dargan made. Kravens-Dargan then, without realizing that the Court had already disposed of our petition, filed a cross-petition. And in the cross-petition, they asked the Court to give them affirmative relief, that is, order that these underwriters appoint one arbitrator and that they cooperate in the appointment of an umpire, and then that panel will decide the consolidation issue. In opposition to that, the underwriters said expressly, what should happen here is there should be four panels put in place as per the contract, and then the question of consolidation should go to those four panels. So in some strange sense, you have common ground between what the underwriters are saying and what Kravens-Dargan will say. The question of consolidation is for the panels or the panel. The question is, what panel? Is it one panel which is set up in response to an arbitration demand, or is it four panels that is set up in response to the arbitration clauses in the four, or I should say five separate reinsurance contracts? So what do you do? I mean, playing this out a bit in a practical sense, what result obtains if you have different decisions from the four different arbitrators on the question of whether it ought to be consolidated or not? Well, that may be a problem. And so there's some questions of efficiency there, and the Court may say, well, that doesn't really make sense. We don't think you should go forward that way. But that concern that you just raised, Your Honor, is a concern of public policy or efficiency, and arbitration is a matter of contract. No, I understand that. I'm just playing this out a bit. Well, as a practical matter, what would happen? If you don't mind saying, why do you care? Well, I'll answer that as well, two questions. But let me answer the practical question first. What would happen is the party that wanted consolidation would name the same arbitrator in each of the four panels, and they would try to get the same umpire in each of the four panels. If they were successful in doing that, then they would be consolidated. If they weren't, then they would argue to each of the panels, and they would come up with some sort of practical solution, maybe joint discovery, maybe joint hearings, whatever the arbitrators felt made sense, given the context of the case. Let me come to your second question, though. Why do we care? Let me try a bit. I presume it's tactical. Well, it's more than that. It's more than that. I mean, people spend a lot of time arguing about procedure because procedure matters. Let me change the facts a little bit and imagine that there was a consortium of people who buy real estate, and they buy a piece of real estate from a property owner on Colorado Avenue. And then under their contract, they have certain residual obligations. Two years later, they buy another piece of real estate from the same property owner, and they use exactly the same wording, but it's a different contract. Ten years later, they buy a third property. Same wording, different property, same parties. Over time, the parties get into a dispute over how things are operating. The seller of the real estate thinks that the dispute is a very general dispute up here. The people who purchased the property, though, think that the disputes are separate disputes relating to how each separate building is being managed. Now, in that hypothetical, the seller of the property is going to want to have one arbitration because he wants to have the panel, a panel of three people, focus on this one overarching issue. The people who purchased the property, though, are going to want to have separate arbitrations because they want it to be focused on the individual issues with respect to each building. So it really is a How are the issues different with regard to different layers of reinsurance? In this respect, Your Honor, it's not just different layers, but it's treaties that cover different periods of time. So, for example, the first treaty covers the period 72 to, I think, 78 or 80. And then there's some successive treaties after that. There are about 30 claims that Craven's Dargan contends are at issue here. They're attached to their arbitration notice. Some of those claims only hit the first treaty. Some of the claims hit the later treaties. So the underwriters think that the issues here are very claim-specific. So if they have a claim that just hits the first treaty, they want to have an arbitration that just deals with the first treaty. Craven's Dargan, on the other hand, thinks that the claims are overarching. So they want to have one consolidated proceeding that will get them, at a very high level of generality, a declaration of rights. Whereas the underwriters want to focus on individual claims that hit individual treaties, and some claims only hit one treaty or two treaties rather than all five. Do you mean agreements rather than treaties? Yes. I'm sorry. I'm using the reinsurance lingo. The treaty, I take it, refers to the whole bunch of agreements. In the reinsurance world, the treaty would refer, in my view, to each individual It could refer to either the whole bunch or to each individual contract. Now, are there different parties to each of these treaties? There are overlapping parties, but they're not identical across all five of the contracts. So there's a change across time in the identity of the parties. Yes. There's some continuity and there's some change. And each treaty was individually negotiated. Pardon me? Each treaty was individually negotiated? Well, one is negotiated in 1970 and one in 1978. So clearly you're talking about different negotiations. And with that law, as I take it, there are different syndicates involved in it. Exactly. And syndicates take even when you have one treaty that's at a first layer and one at a second layer, you have syndicates participating in different levels, different participations. I noticed in their brief they said, well, they're only differenced by layers, but of course, in reinsurance, being on the lower layer or the upper layer makes a huge difference. So that's really a big difference. It's not a technical difference. Your Honor, you had a question. No, I was just going to say thanks for your answer. I understand your position. Thank you. Thank you. Your Honor, and the Court, what I'd like to go to the cross petition, if I could. What Craven-Stargin asked the trial court to do was to — and I'd like to read the exact words that they used, because I think it's important, and this is at the record, page 140. They say, "...Craven-Stargin asked this Court, speaking to the district court, to act in its role as facilitator by referring the parties to a single threshold panel before whom all preliminary matters of contract interpretation and arbitration proceedings must be decided. And the district court granted that cross petition." Well, not exactly. What the district court did, and that may be the difference in this case, it simply says the multiple arbitration theory will be presented to the arbitrator. Why isn't that procedural? It's not procedure because — well, let me back off. It's either procedure or it's not procedure, and I can't really come down one way or the other on that. But let's assume that it's procedure. It still doesn't fall within Green Tree, because you still don't have the predicate of a valid arbitration panel that's been created pursuant to the contract, which you have in Green Tree and in all the other cases that you talk about. Kennedy, are you saying the district court did not have authority to direct the appointment of an arbitrator? It did not. What it had the authority to do was to direct the parties to proceed in accordance with their contract. The — both the FAA and the Convention keep coming back to the contract. And if I could just quote, Section 206 says that the court may direct that the arbitration be held in accordance with the agreement. So there's no authority on the part of the district court to create an arbitration panel to sit and decide issues affecting five separate agreements, unless each of those five separate agreements provides — gives the court the power to do that. And that's fundamental to the whole — to the whole premise of both the FAA and the Convention. Well, let's assume that the district court in the first instance had said, all right, I'm going to grant the underwriter's motion, I'm going to — but as to one contract, I'm going to stay everything as to all the other contracts, and we'll see where your motion to consolidate goes with the arbitrator on the first contract. Nothing wrong with that, is there? I think there would be, because I don't believe that the — What's wrong with the stay order? That — that I think that 206 doesn't give the district court the power to stay the arbitration. It gives them the power to direct that the arbitration proceed in accordance with the contract. And the other thing that I think is wrong with that way of dealing with it is one of the rights that the underwriters on each of the contracts have is to appoint their own arbitrator. And that's a very important right, and it's actually — a lot of the cases that Craven-Dargan has cited, both of the parties agreed that they would — they would appoint the American Arbitration Association to decide issues for them. And I think that answers a lot of the reasons why, for instance — for example, consolidation issues that are coming up here don't come up in those cases, because the American Arbitration Association has rules for dealing with the consolidation issue, and because both parties have agreed in those cases to let the American Arbitration Association deal with issues of consolidation, the courts have been quite happy to say, you made that agreement, you go there and let the AAA decide. Here, on each of the contracts, the underwriters retain for themselves the right to appoint an arbitrator. So going back to your hypothetical, Your Honor, if the district court said, all right, you've got contracts 1, 2, 3, and 4, and 5, I'm going to let a panel on contract 1 decide this issue that is going to affect the rights of 2, 3, 4, and 5. The effect of that is to take away from the underwriters on 2, 3, 4, and 5 their right to appoint an arbitrator. And that right is protected by Section 206. They have the right to appoint an arbitrator to decide disputes on their contract. They've retained that right. They haven't given it away to the American Arbitration Association or anyone else. And so the court, even if — I understand all the reasons of efficiency and wouldn't it make sense — wants to do that. Well, you've got that, too. There are some policy considerations, particularly in reinsurance contracts involved in major tort litigation or damage litigation, because you have the possibility of a lot of inconsistent results, both on the law and the facts. Obviously, if you're talking about what time periods — over what period of time damage accrues in a typical spill, a toxic spill, I mean, those — the possibility of inconsistent results is rather troubling from a legal perspective, from a policy perspective. It's not just efficiency. Well, let me wrap all of that in. Let me wrap all of those public policy concerns in. And certainly in Craven's Argonne's brief, they say that what the district court did on their cross-petition is justified by public policy. What I want to suggest to the Court is that arbitration is quintessentially a matter of private agreement. It's consent, not coercion. If these parties came down on a different side of public policy than what the Court comes down, Section 206 — You're just expressing a concern. I wasn't saying that I was — No. No, I understand. But that concern, though, is one that is set off to one side by Section 206, which keeps focusing the Court on the agreement that the parties entered into. And I would say that there are practical ways to deal with four or five arbitration panels. And I gave you some examples of those. Another example would be for each of the panels to be aware of what decisions the others were reaching. So there are ways of going forward in a practical way on this basis. And there is real prejudice to my clients because, remember, arbitration awards are not reviewable in any meaningful sense. And so people in business can legitimately say, we're only going to put so much of our liability before a panel of three individuals when we only get to pick one, the other side picks one, and their decision is not going to be reviewable. And that's a legitimate thing for business people to decide, that they're going to cabin off their potential liability in any particular arbitration. And they did that in this instance by requiring that the arbitration — each separate contract has its own arbitration clause, and each arbitration clause provides that it will — that it applies to this contract. This seems to be, you would think, an issue that has arisen on prior occasions. I mean, this is not an unprecedented situation. Has the industry been able to deal with the matter of consolidation or no consolidation in these cases? Yes, Your Honor. The AAA, for example, to the extent that arbitration clauses have AAA clauses in them, then that dealt with — Well, they have their own rules. They have their own rules that deal with this. In terms of the reinsurance industry, there is a Seventh Circuit opinion by, I think, Judge Posner in a case involving — it's cited in the Wausau case, which was brought to your attention, that quotes a clause that deals with consolidation. So certainly later on, I think in the 80s and probably coming into the 90s, there are I can't tell you whether those clauses were very much in people's thinking back in the 1970s. I mean, we are dealing here with contracts which were entered into in 1970, 1970, 1972, 78, 80, 82. So at that time, this issue may not have been at the forefront. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Carter Phillips, and I represent Craven's Dargan in this appeal. I think it's not an accident that counsel spends a lot of time saying, let me talk about a different set of facts, because I think it's reasonably clear that under the facts of this particular case, the decision of the district court is absolutely unassailable, the outcome is completely correct, and this Court should simply affirm. And we start at the first order. And, Judge Thomas, you asked the question. You said, what's wrong with what the district judge said with respect to the first order? He says, we've been asked to compel and stay arbitration. That's denied because there's been no default of any contractual duty on the part of Craven's Dargan. I still don't know what the contractual duty is that we defaulted on under the, you know, we asked for arbitration under our interpretation of the agreement, and we asked them, then, to comply with that requirement. The arbitration clause here is extraordinarily broad. It is with respect to any difference of opinion with respect to this contract. We had a difference of opinion with respect to this contract, believing that the appropriate way to proceed was in a single consolidated arbitration. That's what we made a demand for, and we were ready to go forward. They're the ones who ran to court and asked to deconsolidate the proceeding. That's clearly not the kind of gateway issue that the Supreme Court identified in Howsam and in Greentree as something that a district court is supposed to entertain under any circumstances. Well, this situation is somewhat peculiar because, as I read your demand for arbitration, it's not made under the contract. It's a kind of a blanket demand for arbitration under the treaties without reference to the contractual provisions. I don't think there's a meaningful difference between the treaties and the contracts. I mean, the arbitration clause is embedded within this series of treaty arrangements between and among the various underwriters and then the syndicates downstream. So I don't think, I mean, obviously, the only basis for seeking arbitration is under the arbitration agreement, and our argument, obviously, was it was perfectly reasonable to assert that we have a difference of opinion with respect to this contract that includes the other agreements as well. And that's a reasonable way to read the contract. You don't refer to any arbitration clause in any contract. As I understand it, it's a carefully drafted demand to avoid invoking the specific arbitration clause of any specific contract. Well, to be sure, we, I don't know that it was drafted with respect to any specific agreement. Obviously, we believe that there is an overarching practice that has been undertaken by the underwriters in this circumstance to avoid paying their reinsurance responsibilities. And so it covers, it crosses all of the contracts, yes, and we wanted to have that pattern and practice evaluated by an arbitrator, which we believe to be a difference of opinion with respect to this contract and every other contract that we have among the parties. I understand why you wanted arbitration. I'm just, I'm just exploring whether you ever made a demand that qualifies as a demand for arbitration under the contract, contractual arbitration, as opposed to a comprehensive request under the so-called treaties. I don't know that there's any meaningful difference between the two. I mean, we, the other side has never challenged the adequacy of our demand. Well, the difference would be that if you made a demand under each contract, there would be an appointment of arbitrators under each contract for each panel. And that's, that's would be the consequence if you made a conventional request for arbitration under the contract, right? Well, I mean, you know, did we have the discretion as the party seeking arbitration to make a demand that was specific as to each of the elements or it is to each of the specific arbitration provisions and try to disaggregate it among layers? I said, yeah, I think we clearly could have made that kind of a request, but that I don't, the question is, are we obliged to make that kind of a request? And is that an issue for the Court to resolve as opposed to a question for the arbitrator? But in the first instance, the request for arbitration is contractual. It's under the contract. And if you made a request for arbitration under provision of any of the contracts, there would be an appointment of arbitrators under that contract. And so you end up with four or five panels. But you're avoiding that by making a demand that simply avoids the process of appointing the arbitrators under the contracts. Well, and that issue is a perfectly valid one for the first arbitral panel to consider. Indeed, they have considered that issue and concluded that it was perfectly permissible to file the initial one arbitration panel demand and that that panel will hold on to all of these proceedings. Again, the difficulty here, it seems to me, Your Honor, is that there, you know, that's not the gateway issue that's for this Court to resolve. The gateway issue is, is there an arbitration clause? Is it valid? And does it extend to the particular dispute between the parties? And the answer to both of those questions is indisputably yes. Those are the two issues that are. Wait, wait. I have a question for you about that, if you don't mind. Of course. There are separate arbitration clauses in each contract. So when you say, is there an arbitration clause? And the answer is yes, that it indisputably relates to this contract. When you're speaking of the overall relationship, it seems that it might be glossing over the particular contracts. In other words, there is no, as I understand it, there is no single contract with a single arbitration clause in writing that provides that all the related That's correct, Judge Gould. That's an implied, you know, maybe it's reasonable, but what it's, what it does seem to do, although there are good policy reasons for it, it seems to knock out the individual underwriter's contractual right to appoint their advocate arbitrator, you know, under each contract. And Judge Gould, that is precisely what happened in Greentree. You'll, you'll, the counsel quoted the first part of Greentree about the designation of the arbitrator by each of the sides. But if you go to the next sentence in the Greentree opinion, the court then says, of course, Greentree did not independently select this arbitrator to arbitrate its dispute with the other class members, saying that Greentree's rights with respect to every other one of those contracts is, has been essentially under Greentree's view of the case and argued that, I might say, you know, myself, you know, with, with some force that that's not an issue that, that ought to be submitted to the arbitrator, ought to be decided by the court. And the court said, no, that's not right, that that issue, because it's an open question, is itself a question for the arbitrator to decide. And if it turns out at the end of the day, that the arbitrators make a decision that this ought to proceed as a single arbitration, it will be available at the end of the process for the other side to come to court and challenge that arbitral award on the ground that that panel exceeded its authority by disregarding their contract rights of the individuals. The question is whether or not this court will intervene at the outset of the process, rather than wait until the end of the process. And that's the basis on which the Supreme Court in Howsam and in Greentree and other courts all say, no, the issue is one that you resolve at the end of the process, not that you pretermit the consideration of the arbitration at the beginning of the process. And that's all we're asking for is let's go forward with the process as it's been, as we've made the demand at this point, there's no point in this court intervening. Let's allow the arbitration to go forward. So sometimes you ask the question, what's the reason to go the other way? And the answer is exactly the one you gave. There is the tactical advantage of trying to make this more complicated and thereby, presumably, hoping to be able to force this to some kind of a resolution on terms that are more favorable to the underwriters. I understand that tactic, but it's not a tactic that's required as a matter of, or that is warranted as a matter of law. And there's no reason in the world for this court to embrace it as an approach that it ought to approve. If we adopt your view, are we simply endorsing a race to the courthouse, a race to the notice, if you will? In other words, if they had commenced this in the way that they wanted, and Judge Letts had said, well, that's fine. I'm referring it to the multiple arbitrators. And you had come in and said, no, we think it ought to be consolidated. And you said, well, sorry, that's for the arbitrators. We're in the same position under your view, right? Arguably, that'd be true, although I'm not sure on what basis they would have had a reason to demand an arbitration. I mean, they're just not paying. Right. I mean, they have nothing to complain about. We're the ones who are complaining. So it seems to me that you ought to give the plaintiff the benefit of the opportunity to go to the arbitrator to, in the first instance, to set it up. If they want to come in and subsequently make a different set of arguments before the arbitrator, that would be a different situation. But they have not made a separate demand for any additional arbitrator panels. Let's say that you had wanted multiple panels that had made that demand in the first instance, and they had resisted saying we needed consolidation later. I assume your position, based on your view now, would be, look, we made a proper arbitration demand on the various contracts. We are entitled to do that. It's not for the courts to intervene. Right. No, that's absolutely true. As it happens, I think in general, the more, you know, the party asking for the arbitration will more often than not, obviously, seek the more efficient consolidated proceeding, because that's the party who isn't getting the money and obviously would prefer to have the resolution of the dispute sooner rather than later. And that's almost inherently going to be the case when you're following a single proceeding rather than have to go through all of the multiple proceedings. Is the arbitration going forward under Judge Lett's order? Yes, it is going forward. The question of whether or not additional panels ought to be brought out or should be identified has been rejected by the arbitration panel, and they are proceeding to resolve all the disputes at this point. So the panel was appointed under one of the contracts? Is that what happened? Well, I mean, it depends on how you want to read the arbitration decision. I mean, the panel was appointed and the panel has concluded that it's properly constituted for purposes of resolving all of the disagreements among the parties. So that's their interpretation of the contract. And the panel was appointed pursuant to your demand and then made the decision on whether or not to proceed in terms of consolidation. That's correct. And obviously, it remains to the other side at the end of the process to say that they exceeded their authority in reaching that conclusion. I don't think they did, but I understand they'll certainly have that argument. Is the panel composed of party arbitrators and a neutral? Yes, Your Honor. So both party arbitrators agreed on consolidation? My understanding is that there was a unanimous decision. They didn't write a separate opinion. I think they just simply... But it's unanimous. But yes, there was no dissenting statement made under those circumstances. You know, with respect to the cross petition, Your Honors, it seems to me in some ways, if there even, if there had been error there, it would be largely harmless because at this stage, all we really wanted was to be able to proceed in accordance with our demand. They sought to unwind the demand in a sense that was denied. Going forward and telling them to go to comply with the way the demand proceeded seems to me to have done essentially nothing more than what was required under the arbitration agreement in any event. And so there's no prejudice, or at least none that is identifiable from my perspective. And therefore, you know, the case has now gone forward. At this point, it would seem to me to make no sense for this Court to revisit any of these issues, allow the proceeding to end. And if the, if at the end they conclude that there's been some kind of error or prejudice, et cetera, then they're free to go back to the district court to raise that issue. But I would urge the Court not to intervene at this point. And if there are no further questions, I would urge the Court to affirm. Thank you. Thank you. I think we took you over your time in your initial presentation. But if you want to respond in two minutes, I'd be happy to hear your remarks. Mr. Grace. First, in terms of the proceeding that's going forward, that proceeding is going forward not pursuant to any contract. It's going forward proceeding according to Judge Lett's second order, which directed the underwriters to appoint a single arbitrator and directed them to cooperate in the appointment of an umpire. How do you respond to Mr. Phillips' argument that at the end of the process, you will have reserved your right to challenge that? Two ways. First of all, how real is that challenge? Section 10 of the FAA severely limits the power of the Federal Court to look into what an arbitration panel does when it's deciding an arbitration. So I question how real that challenge is. What has the panel decided? I take it there has been a decision, unanimous decision. What is it? What's the decision? Well, the decision was, and as arbitration panels go, it's sort of a split decision. The decision was to, on the one hand, go forward on a consolidated basis. On the other hand, the decision was that if you look at the arbitration demand, there are a list of 30 claims there. And a huge concern that underwriters have is that a single arbitration really isn't the place to decide 30 complex claims. And so the panel put in place procedures that will require Craven's Dargan to identify a more limited number of claims, which will then be heard for decision in January of next year. So if you will, there was obviously some horse trading going on. But it's an ongoing process to resolve the Craven's Dargan's claims. It is an ongoing process, yes. Yes. The second response, though, Judge Thomas, to your question, which was why shouldn't we just let the panel go forward, you are giving guidance here, not just in this case, but in other cases. And you have before you a statute, Section 206, which gives the district court the power to make sure that arbitrations proceed in accordance with the contract. It doesn't require the parties to wait to the end of the day and take whatever limited appeal they have. If the arbitration demand is not in accordance with the contract, they can come in to court and have the court do something. That's what we're asking this Court to do. We're asking it to enforce the rights that are given under Section 206. And one final point. I thought it was interesting how many times the question was asked of Craven's Dargan counsel, under what contract is this arbitration proceeding? And I submit that that question was never answered because the arbitration is not proceeding under any particular contract. It's proceeding according to a district court order, and that's not how arbitration is supposed to work. It's fundamentally opposed to the idea of arbitration being a matter of consent and the parties being able to structure how they are going to proceed. Did you try to get a stay of the district court's August order? We did, Your Honor. We tried in both the district court and here, and we were unsuccessful. Yes. Thank you, counsel. I want to thank both of you for your arguments. Mr. Race, Mr. Troves, thanks for coming out for D.C. and welcome to the Ninth Circuit.
judges: Thomas, Gould, Schwarzer